## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

*FILED*

*OCT 09 2018*

*U.S. CLERK'S OFFICE*
*INDIANAPOLIS, INDIANA*

Norman Peck,
    Plaintiff,

v.

IMC Credit Services,
    Defendant

Case No. _____

**COMPLAINT**  **1**  **18-cv-3143 SEB -TAB**

28 USC §§ 1331 and 1343
Demand for Jury Trial

# COMPLAINT

## Introduction

Norman Peck first received communication from collection agency IMC Credit Services (IMC)

on October 23, 2017. This debt-collection notification contained falsehoods. IMC then

repeatedly violated the Fair Debt Collection Practices Act (FDCPA). The FDCPA has provisions

for damages. Is IMC liable for such damages?

## Jurisdiction and Venue

Peck has been a resident of Howard County, Indiana at all times relevant to this action. Peck

commences this COMPLAINT in the United States District Court for the Southern District of

Indiana, Indianapolis Division (COURT). Federal Rules of Civil Procedure (FRCP), Rule 3.

**The COURT has *in persona* jurisdiction over the parties.** IMC is subject to the Fair Debt

Collection Practices Act's due process. IMC lacks an affirmative defense under FRCP 12(b)(2).

**The COURT has subject-matter jurisdiction over FDCPA claims.** 15 USC §1692k(d). IMC

has no FRCP 12(b)(1) affirmative defense.

**The COURT has jurisdiction to grant Peck relief for his claims.** The COURT has original

jurisdiction over IMC's violations of the laws of the United States. 28 USC §1331. The COURT

has original jurisdiction over this civil action to recover damages for injury to Peck for

deprivation of rights or privileges. 28 USC §1343(a)(1). This COMPLAINT satisfies the

jurisdictional requirements.[1] Again, an affirmative defense under FRCP 12(b)(1) is inapposite.

**The plaintiff has standing.**[2] Peck clearly alleges facts demonstrating that he may invoke this

COURT's remedial powers.[3]

**This COMPLAINT survives an FRCP 12(b)(6) motion to dismiss.** Rule 12(b)(6) does not

countenance dismissals based on a disbelief of the factual allegations.[4]

**This COURT is the proper venue for this civil action.** The plaintiff commences this action

in a district court appropriate for enforcing Debt Collection Practices liabilities within one year

from the date the violations occurred.[5] Peck files this FRCP 7(a)(1) pleading by delivering it—

---

[1] Peck states claims for relief and a short and plain statement of the grounds for the COURT's jurisdiction. FRCP 8(a)(1). This COMPLAINT is timely filed. 15 USC §1692k(d). Peck brings statements of material facts, which are identified by substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) at 248. Justifiable inferences of genuine issues can be drawn from these facts. *Id.* at 255. These facts demonstrate why relief can be granted upon each of Peck's claims. Peck furnishes—at a bare minimum— "a short and plain statement of the claim[s] showing that the pleader is entitled to relief". FRCP 8(a)(2). Peck brings specific facts, which give the defendant fair notice of what the claims are and the grounds upon which they rest. *Erickson v. Pardus*, 551 U.S. 89 (2007) at 93. Peck's grounds are "more than mere labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) at 555. This complaint states claims to relief that are plausible on their face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) at 663.

[2] Standing can exist where "the right invaded is a legal right,—one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege". *Spokeo v. Robins*, 578 U.S. ___ (2016) (quoting *Tennessee Elec. Power Co. v. TVA*, 306 U.S. at 118–138 (1939)).

[3] *Warth v. Seldin*, 422 U.S. 490 (1975) at 490, 498–99: [T]o have standing a complainant must clearly allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Peck has satisfied the three elements that are the "irreducible constitutional minimum" of standing. *Spokeo* citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) at 560–561.

[4] *Walker v. National Recovery, Inc.*, 200 F.3d 500 (7th Cir. 1999) quoting *Neitzke v. Williams*, 490 U.S. 319 (1989) at 327.

[5] FRCP 3. See also Public Law 95–109, 91 Stat. 874, Title VIII (Debt Collection Practices), §813(d):
> An action to enforce any liability created by this title may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

via USPS certified mail #70171070000059561571—to the district clerk in a manner prescribed by the Federal Rules of Civil Procedure.[6] Peck has no means of travel to the COURT and wishes to avoid delay and ever-increasing mailing costs.[7] He seeks authorization to submit his future filings via electronic means.[8]

## Table of Contents

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Jurisdiction and Venue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Statement of Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Claims Upon Which Relief Can Be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    COUNT I – Violation of 15 USC §1692f(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    COUNT II – Violation of 15 USC §1692g(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . 11
    COUNT III – Violation of 15 USC §1692e(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . 12
    COUNT IV – Violation of 15 USC §1692e(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . 13
    COUNT V – Violation of 15 USC §1692e(10) . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    COUNT VI – Violation of 15 USC §1692g(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    COUNT VII – Violation of 15 USC §1692e(14) . . . . . . . . . . . . . . . . . . . . . . . . . 16
    COUNT VIII – Violation of 15 USC §1692f(1) . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    COUNT IX – Violation of 15 USC §§1692d, 1692f(6), and 1692k(a)(3) . . . . . . . . . . . . . . 18
Damages Which Can Be Awarded . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Prayer (Relief Wanted) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
Notary's Certificate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Complimentary Closing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

---

[6] FRCP 5(d)(2)(A). Rule 5-1(a) of the Local Rules of the U.S. District Court, Southern District of Indiana (L.R.). This pleading is a case-initiating document filed in paper form and satisfies all formatting and non-electronic filing requirements necessary for the purpose of filing. L.R. 5-2(b), L.R. 5-1(b), and L.R. 5-1(d). Three copies of this COMPLAINT are being filed with the clerk. One copy is for the COURT record, one is for the defendant, and one is for the plaintiff. Peck wants all 24 pages of his copy stamped to indicate that this COMPLAINT is in the COURT record (*e.g.*, "FILED"). Peck includes an envelope bearing his name/address and sufficient postage for the return mailing of his copy.

[7] FRCP 1: "to secure a just, speedy, and inexpensive determination of every action and proceeding."

[8] FRCP 5(d)(3). L.R. 5-2(a). The plaintiff is currently *pro se* and thus needs authorization to file electronically. L.R. 5-3(g). This filing includes Peck's motion for such e-filing (with a proposed order per L.R. 5-1(b)).

# Statement of Case

IMC is governed under the Consumer Credit Protection Act[9] and Fair Debt Collection Practices Act (FDCPA).[10] Indiana abides by and adheres to these two federal laws. Courts of competent jurisdiction—both state and federal—have drawn legal conclusions about the FDCPA. Because these conclusions are in substantial agreement regarding the issues in this lawsuit, Peck cites—with full faith and credit—the most salient caselaw.

**The validity of a debt allegation isn't in question.** The Fair Debt Collection Practices Act is designed to protect consumers from the unscrupulous antics of debt collectors.[11] The primary issues are (1) how the alleged debt was or was not validated and (2) the wrongful actions of IMC in attempting to collect the alleged debt.

**Each "violation of procedural right granted by statute" constitutes an injury in fact.[12]** The defendant committed wrongful actions that violated (a) the federal law under the FDCPA and (b) Peck's civil rights. Peck alleges more than just "bare procedural violation[s]."[13]

**The *bona fide* error defense in §1692k(c) does not apply.** The Supreme Court held that a §1692k(c) defense does not apply to a debt collector's mistaken interpretation of the FDCPA's

---

[9] 15 USC Chapter 41, §§1601–1693r.

[10] Public Law 95–109, 91 Stat. 874, "Debt Collection Practices", enacted September 20, 1977; codified in the United States Code, Title 15, Chapter 41, Subchapter V, §§1692–1692p.

[11] *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998).

[12] *Spokeo v. Robins*, 578 U.S. ___, 136 S.Ct. at 1540 (2016). Peck is not required to allege any additional harm beyond the ones Congress has identified; Peck seeks to vindicate his own private rights; Peck sues based on the violations of his private rights that Congress created and need not allege actual harm beyond the invasion of those private rights; IMC's violations of Peck's personal legal rights satisfy the injury-in-fact requirement; Peck has standing; he shows multiple injuries to his particular rights (as distinguished from the public's interest in the administration of the law); Peck demonstrates definite and concrete adverseness—rather than hypothetical, conjectural, speculative, or abstract injuries; Peck has a personal stake in the outcome; Peck alleges particularized facts demonstrating that IMC's practices harmed him and that Peck would benefit personally in a tangible way with the COURT's intervention. *Spokeo*; *Stern v. Marshall*, 564 U.S. 462, slip op. at 23 (citing *Crowell* v. *Benson*, 285 U.S. 22 (1932) at 50–51) ("cases of private right, that is, of the liability of one individual to another under the law as defined.").

legal requirements.[14] Furthermore, such a misinterpretation "cannot be 'not intentional'".[15] FDCPA violations are subject to civil penalties of up to $16,000 per day.[16]

## Statement of Facts

In this short and plain statement Peck makes simple, concise, and direct allegations showing that he is entitled to relief on his claims.[17]

### 1. IMC sent Peck a debt-collector notice in October 2017.

On October 23, 2017 Peck received an envelope containing an unsigned one-page document dated October 17, 2017 that identified "IMC CREDIT SERVICES"—but no individual—as the sender. A barcode was visible through the envelope's window.

The defendant's letter begins, "The above referenced account has been placed with IMC Credit Services for billing. Our records indicate the Balance Due remains unpaid and is your responsibility." MEDICAL ASSOCIATES LLC (hereafter "MEDICAL ASSOC.") is listed as "Creditor".

The letter states that if Peck did not, within 30 days of receiving the letter, "dispute the validity of this debt or any portion thereof, this office will assume this debt is valid." The letter also notified Peck that verification of the debt would be obtained and mailed to Peck if he timely disputed the validity of the alleged debt.

---

[13] *Spokeo*, slip op. at 8-11.

[14] *Jerman*, slip op. at 6-30.

[15] *Id.* at 6-12.

[16] See *Jerman v. Carlisle*, 559 U.S. 573 (2010) ("[V]iolations of the FDCPA are deemed to be unfair or deceptive acts or practices under the Federal Trade Commission Act (FTC Act), 15 U. S. C. §41 et seq.")

[17] FRCP 8(a)(2) and (d)(1).

## 2. Peck mailed IMC his timely dispute letter on November 13, 2017.

Peck timely disputed IMC's debt allegations via USPS certified mail. The body of this letter in

its entirety follows:

> On October 23 I received a letter that IMC Credit Services mailed to my mail box. To the best of my knowledge, I've never heard of IMC Credit Services before. Nor have I bought any merchandise from IMC Credit Services or asked IMC Credit Services to perform any service for me.
>
> If I understand your letter correctly—and please promptly correct any misunderstandings I may have—IMC Credit Services is a debt collector attempting to collect a debt for Medical Associates, LLC. I want to resolve this matter quickly, but I suspect that error or fraud was involved in what was placed with IMC Credit Services for billing. Therefore, I insist that IMC Credit Services proves that I owe IMC Credit Services this purported debt and why I owe it.
>
> In order to prove the debt, I insist on receiving a signed and sworn statement made before notary public under penalty of perjury by a person having firsthand knowledge of the indebtedness and stating that the reported indebtedness was a legal indebtedness under all applicable state and federal laws, was not subsequently disputed, and swearing that this purported debt is not now nor ever has been part of any tax write off scheme nor insurance claim. Please be advised that I am requesting validation and competent evidence that I had some contractual obligation without consumer protection encumbrance whereby I incurred the original claims associated with this purported debt. Your failure to provide such information as I request in a timely manner may constitute *prima facie* evidence of intent to defraud, intimidate, or coerce me and to deprive me of my civil rights.
>
> Please be advised that under the Fair Debt Collection Practices Act I am authorized to demand that you only communicate with me via United States Postal Service mail sent to P.O. Box 273, Kokomo, Indiana. Please be advised that any contact made by IMC Credit Services with any third-party firm or entity regarding this issue, absent compliance with each and every part of this demand for validation, may constitute violation of the Fair Debt Collection Practices Act and the Fair Credit Reporting Act and may constitute grounds for civil or criminal action or complaints being filed against you.
>
> My requests are not arduous; we can quickly settle this matter in an amicable fashion. I look forward to hearing from you.

Although Donna Martin signed for receipt on November 15, 2017, IMC has never responded to

any of Peck's dispute-letter requests.[18]

### 3. IMC has procedural and substantive debt-collector obligations.

The purpose of the Fair Debt Collection Practices Act is to eliminate abusive debt-collector practices.[19]  To that end the U.S. Supreme Court has ruled that "the Act imposes various procedural and substantive obligations on debt collectors".[20]  The defendant is a "debt collector", both by statutory definition and its own admission.[21]

The FDCPA definition of "creditor" uses the words "debt" and "credit".[22] The word "debt" also has an FDCPA definition.[23]  It uses the word "consumer", which also has an FDCPA definition.[24]

IMC's letter listed postal addresses in two states for the purpose of debt collection.  The defendant thus provided *prima facie* evidence of using "interstate commerce or the mails".[25]

Peck hasn't seen any evidence that MEDICAL ASSOC. offered or extended him "credit" creating a "debt" that he owed to a "creditor", thereby making him a "consumer". Peck didn't enter into a contract with either IMC or MEDICAL ASSOC. concerning the transaction of money, property, insurance or services. He has no obligation to make payments to them.[26]

---

[18] *E.g.*, "a signed and sworn statement made before notary public under penalty of perjury by a person having firsthand knowledge of the indebtedness". [The plaintiff sees no FDCPA time limit for responding to a dispute letter. He has been charitable, but must act within the statute of limitations. 15 USC §1692k(d).]

[19] 15 USC §1692(e). There "is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 USC §1692(a).

[20] *Sheriff v. Gillie*, 136 S.Ct. 1594 (2016), slip op. at 1.

[21] 15 USC §1692a(6). IMC's letters dated October 17, 2017 and September 24, 2018. [IMC also stated that it is "A Collection Agency" in its October 17, 2017 letterhead.]

[22] 15 USC §1692a(4). [Note: "credit" has no FDCPA definition.]

[23] 15 USC §1692a(5).

[24] 15 USC §1692a(3).

[25] 15 USC §§1692(d) and 1692a(6).

[26] "The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of

#### 4. Peck gives IMC fair warning of this lawsuit.

Peck sought to negotiate a settlement out of court. On September 17, 2018 he mailed a tort letter to IMC—at P.O. Box 20636, Indianapolis, IN—in which he stated that he would entertain reasonable offers to make him whole or—in the alternative—file this lawsuit.[27]

#### 5. IMC declines settlement negotiations.

On September 28, 2018 the plaintiff received IMC's response to his September 17 letter. According to IMC's corporate compliance officer, Noelle Ten Eyck, IMC declined Peck's preference—negotiating a settlement.[28] Furthermore, she made clear that IMC is actively engaged in debt collection against the plaintiff.[29] IMC's collection efforts persist.[30]

Given the defendant's failure to furnish any aspect of the dispute letter, Peck presumes that: (1) IMC cannot prove its purported debt; (2) no one will sign a sworn statement before a notary

---

a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 USC §1692a(5).

[27] Peck simultaneously mailed identical copies of this certified correspondence to IMC at 6955 Hillsdale Court, Indianapolis. See Peck's discussion of IMC's multiple addresses on page 17, footnote 83.

[28] Peck is grateful to IMC for the reference to "statutory damages". He then looked into this phrase more closely. (See page 20, "DAMAGES WHICH CAN BE AWARDED".) Peck is also grateful to learn the names/titles of two IMC employees (*i.e.*, Noelle Ten Eyck and Stacy Pauley. (Previously, Donna Martin and Rebecca Adams printed their names on USPS 3811 forms, but they might not be IMC employees.) Unfortunately, IMC misstated important facts, the biggest of which was: "The proper statutory validation was provided". Also, IMC's recent production of a confusing "itemized bill" doesn't satisfy Peck's dispute-letter demands.

[29] The following words appear at the bottom of the one-page letter: "**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**" [Compare with 15 USC §1692f(6).] Such §1692e(11) language is required in the "original written communication" (*i.e.*, IMC's October 17, 2017 letter).

[30] Ms. Ten Eyck's assertion—"Upon receipt of your dispute, our office ceased all communications on your account"—was nullified when she mailed her letter. It is also irrelevant. The debt-collection prohibition under §1692c(c) doesn't apply to this case. Peck didn't notify IMC that he refused to pay a debt. Additionally, Peck's dispute letter clearly stated that he wanted all communications to be mailed to him. Moreover, the defendant didn't advise Peck that further debt-collector efforts were terminated. Compare with 15 USC §§1692c(c)(1) and 1692f(6).

public; (3) Peck's dispute wasn't reported[31]; (4) the purported debt was a tax write-off scheme and/or insurance claim.[32] Since the defendant has refused to furnish Peck's demand for validation, he presumes that IMC's failure constitutes: (a) *prima facie* evidence of intent to defraud, intimidate, or coerce me and to deprive me of my civil rights and (b) violation of the Fair Debt Collection Practices Act and the Fair Credit Reporting Act.[33]

## Claims Upon Which Relief Can Be Granted

As the Supreme Court has held in the general context of consumer protection—"it does not seem 'unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.'"[34] IMC repeatedly crossed lines proscribed by the Fair Debt Collection Practices Act and is responsible for the consequences.

The FDCPA expressly, or by clear implication, grants rights of action and thus standing to seek relief.[35] Peck submits the following claims. Each contains triable issues of material fact, based on the plaintiff's current knowledge. Peck has reason to believe and does believe that the discovery phase of this civil action will yield many more triable claims.[36]

The Seventh Circuit instructs its lower courts to view debt-collector letters through the perspective of the "unsophisticated consumer" (*i.e.*, the unsophisticated-consumer standard) and

---

[31] See, *e.g.*, 15 USC §§1681–1681x (re: credit reporting agencies) and Peck's dispute letter, above.

[32] See the plaintiff's dispute letter, above.

[33] *Ibid.*

[34] See *Russell v. Equifax*, 74 F.3d 30 (2nd Cir. 1996) (quoting *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374 (1965) at 393, 85 S.Ct. 1035 at 1047 quoting *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337 (1952) at 340, 72 S.Ct. 329 at 330-31).

[35] *Warth v. Seldin*, 422 U.S. 490 (1975) at 510.

[36] *Sayles v. Advanced Recovery Systems, Inc.* (5th Cir. 2017) #16-60640, slip op. at 4 (the 30-day requirement of §809 "does not carry over to §807(8)"). Examples of additional triable claims are §807(8) of P.L. 95-109 and the Fair Credit Reporting Act. *Cf.* Peck's dispute-letter reference to "Fair Credit Reporting Act".

to then apply this standard to the claims of plaintiffs.[37]  Under 15 USC §1692e, ignorance is no excuse, "even when false representation was unintentional."[38]

## COUNT I – Violation of 15 USC §1692f(8)[39]

Clearly visible through the envelope's glassine window was "a barcode that, when scanned by the appropriate reader, [would reveal the collection] account number."[40]  A "debt collector violates §1692f(8) by sending a collection letter in an envelope that displays the debtor's bare account number" or "(assumedly) offending barcode".[41]  This barcode, when read or scanned, "results in a display of a string of numbers, such as the account number of the alleged debts [that IMC] assigned to [Peck] and/or a reference or registration code number."[42]  The account, reference, or registration numbers exposed constitute personal identifying information and its disclosure has the potential to cause harm to the consumer; the barcode visible through the envelope's glassine window is clearly a §1692f(8) symbol used to communicate with the alleged debtor.[43]

In pertinent part, Section 1692f(8) prohibits using *any language or symbol*, other than the debt

---

[37] *Turner v. J.V.D.B & Associates*, 330 F.3d 991 (7th Cir. 2003). See, *e.g.*, 15 USC §§1692e and 1692f.

[38] *Turner* at 330 F.3d 997 (citing *Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000) at 472 citing *Russell*, 74 F.3d at 33).

[39] 15 USC §1692f(8):
> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: … (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

[40] *Daubert v. NRA Group LLC* (3rd Cir. 2017) case #16-3629, slip op. at 3.

[41] *Id.* at 16-17.

[42] *Stever v. Harrison* (D.N.J., 2017) case #16-298, slip op. at 2.

[43] *Id.* at 12.

collector's address, on—or seen within—any debt-collector envelope.[44] Peck suffered a concrete, injury-in-fact harm due to the possibility of disclosure of personal identifying numbers through IMC's barcode.[45] The overwhelming majority of courts have determined that FDCPA violations under §1692e and §1692f give rise to concrete, substantive injuries sufficient to establish Article III standing.[46] "In *Nickelodeon*, the [Third] Circuit explained that 'unlawful disclosure of legally protected information' constituted 'a clear *de facto* injury.'"[47] The intangible harm that Congress sought to remedy "has a close relationship to harm [i.e., invasion-of-privacy] that has traditionally been regarded as providing a basis for a lawsuit in English or American courts".[48] The defendant's disclosure of any language or symbol "implicates core privacy concerns."[49] Peck alleges "a sufficiently 'particularized' injury"[50] and seeks judgment in his favor for IMC's barcode violation.

## COUNT II – Violation of 15 USC §1692g(a)(4)[51]

IMC's letter stated: "If you notify this office in writing within 30 days from receiving this notice

---

[44] *Id.* at 2 [emphasis in original].

[45] *Id.* at 7.

[46] *Id.* at 7, fn.3 (citing *Bock v. Pressler*, 2017 WL 2304643 (D.N.J. 2017)).

[47] *Stever* at 8 (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016)).

[48] *Stever* at 9 (quoting *Spokeo v. Robins*, 136 S.Ct. at 1549).

[49] *Stever* at 10 (citing *Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014) at 304).

[50] *Stever* at 11 (citing *Fuentes v. AR Resources, Inc.*, 2017 WL 1197814 at *5).

[51] 15 USC §1692g(a)(4) (Validation of debts):
Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, [], send the consumer a written notice containing—... (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector. [See §1692g(a)(4) notes referencing "Pub. L. 90–321, title VIII, §809, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 879; amended Pub. L. 109–351, title VIII, §802, Oct. 13, 2006, 120 Stat. 2006."]

that you dispute the validity of this debt or any portion thereof, this office will: obtain the verification of the debt … and mail you a copy of such … verification."

Despite receiving Peck's timely written response on November 15, 2017—*i.e.*, within the proscribed 30-day period—which notified the defendant that Peck disputed the alleged debt and insisted on a signed and sworn verification of the alleged debt, Peck received no sworn verification from IMC. Peck followed IMC's instructions but got nothing. He is confused by IMC's intentions on October 17, 2017. The defendant's collection notice confused Peck about his verification rights and violated the clear language of the Fair Debt Collection Practices Act.[52]

A debt collector whose dunning letter suggests urgency must meet on the merits a contention that the letter would confuse an unsophisticated reader.[53] Peck seeks judgment in his favor for IMC's failure to validate the alleged debt.

### COUNT III – Violation of 15 USC §1692e(2)(A)[54]

IMC used "false, deceptive, or misleading representation or means in connection with the collection of any debt" when it misrepresented the character, amount, or legal status of a non-existent debt.[55]

---

[52] 15 USC §1692g(a)(4): "verification of the debt <u>will</u> [emphasis added] be mailed".
[53] *Walker v. National Recovery*, 200 F.3d 500.
[54] 15 USC §1692e(2)(A):
    A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: … (2) The false representation of—(A) the character, amount, or legal status of any debt; …
[55] See *Jerman v. Carlisle*, 559 U.S. 573 (2010) ("Among other things, the Act prohibits debt collectors from making false representations as to a debt's character, amount, or legal status, §1692e(2)(A).")

A debt collection practice may violate the FDCPA even if it does not fall within any of the subsections, and a single violation of section 1692e is sufficient to establish civil liability under the FDCPA.[56]

"An FDCPA claim has nothing to do with whether the underlying debt is valid. An FDCPA claim concerns the method of collecting the debt. It does not arise out of the transaction creating the debt".[57] "The plain language of the FDCPA prohibits not only threatening to take actions that the collector cannot take, but also the use of any false, deceptive, or misleading representation, including those about the character or legal status of any debt."[58] Peck seeks judgment in his favor for IMC's violation of 15 USC §1692e(2)(A).

## COUNT IV – Violation of 15 USC §1692g(a)(5)[59]

IMC's letters identify MEDICAL ASSOC. only as "Creditor" and "client".[60] They do not identify the *original* creditor. This is deceptive.[61]

Peck didn't agree to transact money, property, insurance or services with MEDICAL ASSOC. He believes IMC is not alleging that MEDICAL ASSOC. is the original creditor. Peck's dispute

---

[56] *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60 (2d Cir. 1993) (citing *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) at 1318).

[57] *Spears v. Brennan* (Ind. App. Ct. 2001) (citing *Azar v. Hayter*, 874 F. Supp. 1314 (N.D. Fla. 1995) at 1317).

[58] *McMahon v. LVNC Funding* (case #12-3504) and *Delgado vs. Capital Mgmt Services* (7th Cir. 2014) case #13-2030, slip op. at 19.

[59] 15 USC §1692g(a)(5):
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing— ... (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

[60] IMC's initial correspondence ("Creditor"). Ms. Ten Eyck's letter ("client").

[61] *Gammon v. GC Services Limited Partnership*, 27 F.3d 1254 (7th Cir. 1994) at 1257.

letter specifically requested information about the original creditor.[62] Since IMC failed to

distinguish between "creditor" and "original creditor", the latter's name and address remain

unknown to the plaintiff. Peck's continuing confusion is a question of fact, not of law or logic.[63]

Peck seeks judgment in his favor for IMC's failure to notify under §1692g(a)(5).

### COUNT V – Violation of 15 USC §1692e(10)[64]

The type of correspondence that IMC mailed to Peck—commonly referred to as a collection

notice—"gives the consumer the information necessary to challenge the debt allegedly owed

before making payment to the independent collection agency."[65] In writing to Peck, IMC

attempted to obtain credit-card information.[66]

A collection notice is deceptive when it can reasonably be read to have two or more different

meanings, one of which is inaccurate. The terminology in IMC's collection notice is reasonably

susceptible to an inaccurate reading. Its vagueness or uncertainty will not prevent a conclusion of

deception under 15 USC §1692e(10).[67] To an unsophisticated person, a communication that

combines notification of both prompt payment and the 30-day verification period may produce

---

[62] See Peck's dispute letter: "I am requesting validation and competent evidence that … I incurred the original claims associated with this purported debt."

[63] A debt-collection "letter's actual effect on unsophisticated consumers [should not be disregarded]. Whether a given message is confusing is, we held in *Gammon, Bartlett,* and *Johnson*, a question of fact, not of law or logic." *Walker v. National Recovery*, 200 F.3d 500 (7th Cir. 1999).

[64] 15 USC §1692e(10):
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: … (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

[65] *Russell v. Equifax*, 74 F.3d 30.

[66] "WE ACCEPT MASTERCARD AND VISA", "PLEASE PAY IN FULL", "If you wish to make your payment via credit card, please complete the information below and return".

[67] *Russell* (citing *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) at 1319 and *Pipiles v. Credit Bureau*

befuddlement.[68]

It is a "well-settled principle that the FDCPA is a strict liability statute"; Peck "need not show intentional conduct by the debt collector to be entitled to damages."[69] The defendant failed to validate and falsely represented an alleged debt and used deceptive means to obtain very private information. Peck seeks judgment in his favor for IMC's violation of §1692e(10).

**COUNT VI – Violation of 15 USC §1692g(b)**[70]

IMC's letter included a section ("IMPORTANT CONSUMER NOTICE") that included standard Fair Debt Collection Practices Act language (*e.g.*, "Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this [alleged] debt…"). The defendant, however, overshadowed this 30-days-to-dispute notice language with language to the contrary.[71] When a notice contains language that "overshadows or contradicts" other language informing a consumer of her rights, it violates the Act.[72] The FDCPA leaves no room for deviation in the language of the notice.[73]

The key consideration is that the unsophisticated consumer is to be protected against confusion, whatever form it takes.[74] A notice is overshadowing or contradictory if it would make

---

*of Lockport, Inc.*, 886 F.2d 22 (2d Cir. 1989) at 25).

[68] *Walker* (citing *Gammon v. GC Services Limited Partnership*, 27 F.3d 1254 (7th Cir. 1994) at 1257).

[69] *Spears v. Brennan* (Ind. App. Ct. 2001) citing *Russell*, 74 F.3d at 33 and *Bentley*, 6 F.3d at 63.

[70] 15 USC §1692g(b):
> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt

[71] *E.g.*, "pay over the telephone at 317-829-0076", "To pay online visit us at www.imcpayment.com". When Peck read these words, his 30-day period had just begun (*i.e.*, October 23, 2017).

[72] *Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991) at 111 ("the juxtaposition of two inconsistent statements" renders the notice invalid under Sec. 1692g).

[73] *Jang v. A.M. Miller & Assoc.*, 122 F.3d 480 (7th Cir. 1997) at 482.

[74] *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323 (7th Cir. 2000) at 326.

the least sophisticated consumer uncertain of his or her rights. It is not enough for a debt collection agency simply to include the proper debt validation notice in a mailing to a consumer; Congress intended that such notice be clearly conveyed.[75] The language used by IMC overshadows and is "inconsistent with the disclosure of the consumer's right to dispute the debt".[76] Peck seeks judgment in his favor for IMC's overshadowing and inconsistency.

## COUNT VII – Violation of 15 USC §1692e(14)[77]

On August 30, 2018 Peck was searching the NMLS Consumer Access website for "IMC Credit Services" and found other names listed under NMLS ID# 1137738.[78] Undoubtedly even more names existed, but the NMLS website didn't allow them to be viewed and IMC hasn't notified Peck all of its pseudonyms.

The Supreme Court recently noted: "Although the FDCPA does not say what a 'true name' is, its import is straightforward: A debt collector may not lie about his institutional affiliation."[79] The Seventh Circuit declared: "Notices sent to debtors must not confuse them about the verification rights established by the Fair Debt Collection Practices Act".[80] Additionally, a debt collector's violation of 15 USC §1692e "is objective, turning not on the question of what the

---

[75] *Swanson v. Southern Or. Credit Serv., Inc.*, 869 F.2d 1222 (9th Cir. 1988) at 1225.

[76] 15 USC §1692g(b).

[77] 15 USC §1692e(14):
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: … (14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

[78] "IMC Credit Services, LLC, dba IMC Credit Services, DBA Medical Provider Accounting Service, DBA [etc.]".

[79] *Sheriff*, at slip op. 9 (quoting *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F. 3d 1091 (6th Cir. 2015) at 1115).

[80] *Walker*, 200 F.3d 500.

debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer."[81] Furthermore, the unsophisticated-consumer test applies to §1692e and §1692f.[82] Peck, again, is confused.[83] Who is "IMC Credit Services"?

Peck seeks judgment in his favor for the defendant's deceptive and misleading representation of the true name and address of its business, company, or organization.

## COUNT VIII – Violation of 15 USC §1692f(1)[84]

Peck didn't enter into a payment obligation concerning the transaction of money, property, insurance or services—or make any contractual agreements—with IMC or MEDICAL ASSOC. Nor has the defendant provided validation and evidence of such. Even if one existed, the "contract in no way provides sufficient verification of the debt."[85]

Peck doesn't know if the defendant has sought or will seek "any interest, fee, charge, or expense incidental to the principal obligation".[86] Nor does he know about IMC's plans for attorney contingent fees for debt collection services.[87] "A contingent fee, even between an

---

[81] *Turner v. J.V.D.B & Assoc.*, 330 F.3d 991 (7th Cir. 2003) (citing *Gammon*).
[82] *Id.*
[83] Peck is also confused about IMC's address. Since October 17, 2017 Peck has seen four different addresses: PO Box 1280, Oaks, PA 19456-1280; PO Box 20636, Indianapolis, IN 46220-0636; 6955 Hillsdale Court, Indianapolis, IN 46250"; and (much more recently) 8085 Knue Road, Indianapolis, IN 46250. Such multiplicity is misleading.
[84] 15 USC §1692f(1):
> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.
[85] *Spears v. Brennan* (IN App. Ct. 2001).
[86] 15 USC §1692(f)(1).
[87] *Spears.*

attorney and his client, is not enforceable unless it is founded upon a prior agreement."[88] "A contingent fee agreement in a collection case that is the product of a bargain between the attorney and client is presumed to be reasonable as between them[, but] it is an entirely different matter when the fee is added to the judgment against the debtor. In that instance the debtor has a direct pecuniary interest in how the fee is determined."[89] "Thus, without other objective evidence of reasonableness, a contingent fee cannot be added to a judgment against a third party."[90] Even if Peck were a debtor owing a valid obligation to MEDICAL ASSOC. and could have disputed additional charges like attorney fees, he was not put on notice that he could dispute these additional attorney charges.[91] Although he has no knowledge of IMC's intentions regarding attorney fees, Peck doesn't need to show the company's intentional conduct under the Act to be entitled to damages.[92] Peck seeks judgment in his favor for IMC's unfair or unconscionable means to attempt to collect any (alleged) debt not expressly authorized by the agreement creating such debt.

## COUNT IX – Violation of 15 USC §§1692d, 1692f(6), and 1692k(a)(3)

Violations of §1692d are not limited to any particular form of harassment or abuse.[93] Compare with §1692f(6), which speaks more specifically to other unconscionable means to collect alleged

---

[88] *Spears* (citing *Waxman Indus., Inc. v. Trustco Dev. Co.*, 455 N.E.2d 376 (Ind. Ct. App. 1983) at 381).

[89] *Valparaiso Tech. Inst. v. Porter Co. Tr.*, 676 N.E.2d 416 (Ind.App.Ct. 1997) at 420 citing *Waxman*.

[90] *Valparaiso* at 420–21.

[91] *Spears* (citing *Baker v. G.C. Servs. Corp.*, 677 F.2d 775 (9th Cir. 1982) at 778 re: "additional charges").

[92] *Russell*, 74 F.3d 30.

[93] 15 USC §1692d:
> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: ...

debts.[94]

By mailing the October 2017 letter, IMC took a nonjudicial action to effect dispossession of the plaintiff's property.[95] The plaintiff believed IMC sought to collect money and information from him.[96] His belief had a "natural consequence".[97] He believed IMC had a "present intention to take possession of [this] property".[98]

Peck began researching a subject unfamiliar to him—debt collection. Although its complexities were oppressive on his time, he persevered because IMC's letter affected "the plaintiff in a personal and individual way".[99] Peck suffered an "injury in fact".[100]

Any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of any actual damage sustained by such person as a result of such failure.[101] Peck seeks judgment in his favor for the defendant's violations of 15 USC §§1692d and 1692f(6)(B).

---

[94] 15 USC §1692f(6):

> [T]he following conduct is a violation of this section: ... (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or ...

[95] 15 USC §1692f(6)(B).

[96] "This is an attempt to collect a debt and any information obtained will be used for that purpose."

[97] 15 USC §1692d.

[98] 15 USC §1692f(6)(B).

[99] *Lujan v. Defenders of Wildlife*, 504 U.S. at 560, n. 1.

[100] "A plaintiff [must demonstrate] (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, slip op. at 5-6. "As relevant here, the injury-in-fact requirement requires a plaintiff to show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Ibid.* at 7–11 (citing *Lujan*, 504 U.S. at 560). Noelle Ten Eyck's recent "collect a debt" language confirms Peck's reason for concern.

[101] Quoting 15 USC §1692k(a)(1).

## Damages Which Can Be Awarded

Statutory damages aren't listed at 15 USC §1692k(a). In fact, the Fair Debt Collection Practices Act doesn't mention "statutory damages". In fact, it doesn't even use the word "statutory".[102] Perhaps the "statutory provision in question *implies* a right of action in the plaintiff."[103] The 2010 *Jerman* case merged statutory damages with "additional damages [that are] subject to a statutory cap of $1,000 for individual actions".[104] Peck proceeds from this legal foundation.

"Congress has determined that the public as a whole has an interest in the vindication of the statutory rights."[105] The defendant is liable for its violations of the Fair Debt Collection Practices Act.[106] IMC's interpretations of its "legal requirements of the FDCPA cannot be 'not intentional' under 15 USC §1692k(c)."[107] It is a fair inference that Congress chose to permit injured consumers to recover actual damages, costs, fees, and modest statutory damages for "intentional" conduct, including violations resulting from mistaken interpretation of the FDCPA.[108]

The following are damages which can be awarded in this case under the FDCPA.[109]

---

[102] The same is true of the Fair Credit Reporting Act.

[103] Quoting *Warth*, 422 U.S. 501 [emphasis added].

[104] *Jerman*, ("…statutory 'additional damages.' §1692k(a).") "A court may also award 'additional damages,' subject to a statutory cap of $1,000 for individual actions". *Id.*

[105] *Tolentino v. Friedman*, 46 F.3d 645 (7th Cir. 1995) (citing *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) citing *City of Riverside v. Rivera*, 477 U.S. 561, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986)).

[106] 15 USC §1692k(a). *Sheriff v. Gillie*, 136 S.Ct. 1594 (2016), slip op. at 3: "A debt collector who violates the Act is liable for both actual and statutory damages. §1692k(a)."

[107] Quoting *Jerman*, slip op. at 6-12.

[108] Quoting *Jerman*. The FDCPA's statutory damages are limited to a mere $1,000.

[109] See U.S. Supreme Court in *Spokeo v. Robins* (2016),
> The Act also provides that "[a]ny person who willfully fails to comply with any requirement [of the Act] with respect to any [individual] is liable to that [individual]" for, among other things, either "actual damages" or statutory damages of $100 to $1,000 per violation, costs of the action and attorney's fees,

1. **Actual damages.**[110] Peck has—thus far—spent 591.5 hours dealing with IMC's illegal activities. He charges $25 per hour for performing legal research and drafting legal papers. (The actual damages are therefore $14,787.50.)

2. **Costs-of-the-action damages.** The plaintiff has shouldered $20.84 in "the cost of the action"[111] (*e.g.*, travel, USPS postage/certification) associated with this action. Also, the COURT may require the payment of a filing fee.

3. **Attorney-fees damages.** An award of attorney's fees is mandatory in the Seventh Circuit.[112]

---

and possibly punitive damages.

and in *Jerman v. Carlisle* (2010),

> The FDCPA is but one of many federal laws that Congress has enacted to protect consumers. A number of these statutes authorize the filing of private suits against those who use unfair or improper practices. See, *e.g.*, 15 U. S. C. §1692k (FDCPA); §1640 (Truth in Lending Act); §1681n (Fair Credit Reporting Act); [ ] Several of these provisions permit a successful plaintiff to recover—in addition to actual damages—statutory damages, attorney's fees and costs, and in some cases punitive damages. *E.g.*, 15 U. S. C. §1640(a)(2) (statutory damages); §1640(a)(3) (attorney's fees and costs); §1681n(a)(1)(B) (statutory and punitive damages); §1681n(a)(1)(B)(3) (costs and attorney's fees); 49 U. S. C. §32710(a) ('3 times the actual damages or $1,500, whichever is greater'); §32710(b) (costs and attorney's fees); 11 U. S. C. §526(c)(3)(A) (costs and attorney's fees).

and in the Seventh Circuit's *Keele v. Wexler* (1998),

> The complaint requested statutory damages as provided for under § 1692k of the FDCPA, as well as actual damages, attorney's fees, litigation expenses and costs. * * * The FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages. ... In other words, the Act is blind when it comes to distinguishing between plaintiffs who have suffered actual damages and those who have not. ... We must focus on the debt collector's misconduct.

[110] See 15 USC §1692k(a)(1) and footnote 109, re: *Spokeo, Jerman,* and *Keele* ("actual damages").

[111] See 15 USC §1692k(a)(3). See also footnote 109 re: *Spokeo, Jerman,* and *Keele* ("costs").

[112] See footnote 109 re: *Spokeo, Jerman,* and *Keele* ("attorney's fees"). See also *Tolentino,*

> The FDCPA provides for an award of costs and attorney's fees [quotation omitted] 15 USC §1692k(a). The statutory language makes an award of fees mandatory. "Because the FDCPA was violated * * * the statute requires the award of costs and a reasonable attorney's fee * * * *Pipiles,* 886 F.2d at 28.

The U.S. Supreme Court specifically mentioned in *Jerman* (majority opinion, footnote 16) this part of *Tolentino*—without ruling on it. N.B.: The plaintiff has not yet hired an attorney on a contingent-fee

4. **Additional damages.**[113] Peck seeks an aliquot part of $1,000 for each FDCPA violation (see COUNTS I through IX, above) that the COURT finds.

5. **Punitive damages.**[114] The defendant has caused the plaintiff a lot of needless distress. Peck seeks punitive damages three times (*i.e.*, $47,425.02) the total amount of actual, costs-of-the-action, attorney-fee, and additional damages ($15,808.34).

## Prayer (Relief Wanted)

WHEREFORE, the plaintiff prays for:

- **actual damages** in the amount of $14,787.50 (thus far);
- **costs-of-the-action damages** ( $20.84 just in postage costs thus far);
- **attorney-fee damages** (in their final amount);
- **additional damages** in the amount of $1,000; and
- **punitive damages** in the amount three times as much as the accumulated total of the actual, costs-of-the-action, attorney-fee, and additional damages.

---

basis.

[113] See 15 USC §1692k(a)(2) and *Azar*, 874 F. Supp. at 1317 (citing *Harper v. Better Business Services, Inc.*, 961 F.2d 1561 (11th Cir. 1992) at 1563).

[114] See footnote 109 re: *Spokeo*, *Jerman*, and *Keele* ("punitive damages"). These opinions refer specifically to the Fair Credit Reporting Act, which will be an important discovery issue in this case.

# Notary's Certificate

STATE OF _Indiana_ )
                            ) SS:
COUNTY OF _Howard_ )

Subscribed and sworn to before me this _5th_ day of _October_ , 20_18_.

My Commission Expires: _March 17, 2024_

[Notary seal]

```
JILL L. EVERS
Seal
Notary Public - State of Indiana
Howard County
My Commission Expires Mar 17, 2024
```

_Jill L. Evers_ (Signature)

_Jill L. Evers_
(Printed) NOTARY PUBLIC

# Complimentary Closing

Peck certifies, to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that this COMPLAINT is not presented for an improper purpose, the claims and legal contentions are warranted by existing law, and the factual contentions have evidentiary support. FRCP 11(b).

Respectfully submitted,

_Norman Peck_

Norman Peck, Plaintiff
P.O. Box 273
Kokomo, Indiana 46903
Telephone number: None
Facsimile number: None
Email address: legal_stuff@use.startmail.com

_OCTOBER 5, 2018_
Date

## Certificate of Service

I hereby certify my delivery of this original COMPLAINT—which includes verification by a

notary public—by U.S. Mail (certification #70171070000059561571) to the clerk of this COURT.

Two additional copies of this 24-page COMPLAINT are also enclosed for the defendant and

myself. (See page 3, footnote 6, above.) Other filings (*e.g.*, motions) are also attached.


_____          OCTOBER 5, 2018
Norman Peck, Plaintiff                    Date
P.O. Box 273
Kokomo, Indiana 46903
Telephone number: None
Facsimile number: None
Email address: legal_stuff@use.startmail.com